IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAFEWORKS, LLC, | § § § | |
| Plaintiff | § § | |
| vs. | § § | NO. 4:08-CV-02860 |
| MAX ACCESS, INC., ALAN L. CHURCH, and GABRIEL J. TORRES, | § § § § | |
| Defendants. | § § § § | |

## DEFENDANT ALAN L. CHURCH'S AND GABRIEL J. TORRES' MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Defendants Alan L. Church ("Church") and Gabriel J. Torres ("Torres") hereby file their Motion for Partial Summary Judgment and Brief in Support, and would show the Court as follows:

### I.   NATURE AND STATE OF PROCEEDING

This lawsuit concerns claims by Plaintiff SafeWorks, LLC ("SafeWorks") against its former employees, Alan Church and Gabriel "Jesse" Torres, and their new employer, Max Access, Inc. ("Max Access"), for alleged breach of a "Confidentiality and Non-Solicitation Agreement" (hereafter "Agreements"), misappropriation of trade secrets and related tort claims. SafeWorks—a global company with 24 locations across North America, additional locations in Europe and Asia, and approximately $75 million in annual revenues—is engaged in the business of manufacturing, selling, distributing and servicing powered access equipment, suspended scaffolding and related safety

equipment. Church was employed as a scaffolding salesman and Torres was employed as a shop manager by Spider, one of the divisions of SafeWorks, in Houston, Texas.

In 1997, after Church and Torres had already been employed by Spider for approximately nine (9) and ten (10) years, respectively, SafeWorks acquired the assets of Spider. In connection with this acquisition, SafeWorks presented its employees with a number of documents to be signed, including the Agreements at issue in this litigation. These Agreements were signed by Church and Torres on October 2, 1997, but were never signed by SafeWorks. Church and Torres now move for summary judgment with respect to the non-solicitation provisions of the Agreements on the following grounds:

(1) The non-solicitation provisions are not part of an "otherwise enforceable agreement,"

(2) The non-solicitation provisions are overly broad as a matter of law because they contain **no geographical restrictions whatsoever** and seek to prevent, among other things, direct or indirect solicitation of <u>any customer of SafeWorks worldwide</u>, regardless of whether Church or Torres had any contact with—or indeed, even knew the identities of—such customers, and

(3) The 6-month period of the non-solicitation provisions have already expired; accordingly, SafeWorks is not entitled to any injunctive relief with respect to these provisions.

Church and Torres and their current employer, Max Access, have already responded to SafeWorks' interrogatories and requests for production in the instant lawsuit. Church and Torres were also deposed by SafeWorks in a prior state court lawsuit concerning the same issues.[1] SafeWorks has not yet responded to written

---

[1] The instant lawsuit was filed on September 25, 2008, after SafeWorks sought but failed to obtain certain preliminary injunctive relief in a prior lawsuit styled *SafeWorks, LLC v. Alan L. Church and Gabriel J. Torres*, No. 2008-48374, in the 164th Judicial District Court of Harris County, Texas (the "Prior Lawsuit"), filed on August 15, 2008.

discovery.

## II.     ISSUES TO BE RULED UPON BY THE COURT

The issues to be ruled upon by the Court are as follows:

(1) Are the non-solicitation provisions of the Agreements "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made"? TEX. BUS. & COM. CODE § 15.50(a).

(2) If so, do the non-solicitation provisions contain "limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than necessary to protect the goodwill or other business interest" of SafeWorks? TEX. BUS. & COM. CODE § 15.50(a).

(3) Have the non-solicitation provisions of the Agreements already expired, so that SafeWorks is not entitled to injunctive relief based on these provisions?

The summary judgment standard of review applies to the issues set forth above. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

## III.    SUMMARY JUDGMENT EVIDENCE

The following exhibits are attached hereto and are hereby incorporated by reference as evidence in support of Defendants' Motion for Partial Summary Judgment:

| | |
|---|---|
| Exhibit A | Confidentiality and Non-Solicitation Agreement signed by Torres on October 2, 1997 |
| Exhibit B | Confidentiality and Non-Solicitation Agreement signed by Church on October 2, 1997 |
| Exhibit C | Excerpts from Deposition of Gabriel J. Torres taken on September 4, 2008 |

Exhibit D    Excerpts from Deposition of Alan L. Church taken on September 5, 2008

Exhibit E    Excerpts from Deposition of Christopher P. Bates taken on September 5, 2008

## IV.   STATEMENT OF FACTS

### A.   *Torres' Employment with SafeWorks' Spider Division in Houston*

Defendant Gabriel "Jesse" Torres began his employment with Spider in October 1987, as a service technician at Spider's location in Houston, Texas. *Exhibit C, Deposition of Gabriel J. Torres ("Torres Depo.") at 7:7-18.* In approximately 1991, Torres became the Houston service manager. *Id. at 6:17 – 8:4.* As service manager, Torres supervised service technicians in the shop and made sure orders were filled. *Id. at 8:5-19.* Although not directly responsible for sales, Torres took calls from customers for orders if the branch manager or salesman were not present. *Id. at 8:20 – 9:3.*

### B.   *Church's Employment With SafeWorks' Spider Division in Houston*

Defendant Alan Church began his employment with Spider in May 1989 in Houston, Texas, where he was employed as a sales representative. *Exhibit D, Deposition of Alan Church ("Church Depo.") at 7:8 – 8:24.* As a salesman for Spider, Church developed business by cold calling potential customers using phone directories and the Yellow Pages, the same method he still employs today. *Id. at 160:6-20.* Notably, <u>during the last 15 years of his employment with Spider, Church's sales territory was limited to the Houston and South Texas area.</u> *Id. at 180:18 – 181:1.* Church typically did not have any contact with customers outside this assigned sales territory. *Id. at 160:3-5.*

### C. *The Non-Solicitation Agreements*

In 1997, SafeWorks acquired the assets of Spider. On October 2, 1997 – <u>after Church and Torres had already been employed by Spider for almost nine (9) and ten (10) years, respectively</u> – Church and Torres were presented with and signed the Agreements at issue in this litigation, copies of which are attached hereto as <u>Exhibits A & B</u>. These Agreements were presented to Church and Torres along with a stack of other documents, including insurance and benefits forms. *<u>Exhibit C</u>, Torres Depo. at 31:4 – 32:23; <u>Exhibit D</u>, Church Depo. at 48:16 – 49:5.* Christopher Bates, the branch manager for Spider's Houston office in 1997, testified that he believed that *every* employee in the Houston office was required to sign the Agreements, regardless of their position with the company. *<u>Exhibit E</u>, Deposition of Christopher P. Bates ("Bates Depo.") at 21:14 – 22:5.* However, the Agreements were not signed by anyone on behalf of SafeWorks. *See* <u>Exhibits A & B</u> at p. 2.

### D. *Resignation from SafeWorks and Employment with Max Access, Inc.*

At the end of May 2008, Church resigned his employment with SafeWorks. *<u>Exhibit D</u>, Church Depo. at 64:17-19.* Church testified that his reason for doing so is because SafeWorks had twice cut his commission rate (first in February 2007 and again in February 2008) and raised his sales targets (from $2.1 million to $2.6 million in February 2007, and from $2.6 million to $3.1 million in February 2008). *Id. at 162:9 – 164:15.* At the time of his resignation from SafeWorks, Church was the only salesman in Spider's Houston office, because another salesperson had quit several months earlier. *<u>Exhibit E</u>, Bates Depo. 15:2 – 16:8.* Remarkably, SafeWorks did not hire any

salespersons for its Houston office for <u>over three months</u> following Church's resignation. *Id.* (confirming that, as of September 5, 2008, SafeWorks still had two open sales positions). Church subsequently began employment with Max Access in June 2008. Although also engaged in the sale and rental of scaffolding and related equipment, Max Access is much smaller than SafeWorks, with approximately $3 million in annual revenues and around 20 employees in Houston and New Orleans only.

Torres had also grown frustrated with his employment with SafeWorks, finding that he was "just overworked and too much stress." *Exhibit C, Torres Depo. at 50:17-21*. Accordingly, Torres—who had previously worked for Max Access for a brief period approximately 10 years earlier—contacted the President of Max Access, Max Cammack, to inquire about employment. *Id. at 34:12 – 36:23*. At the time Torres initiated this contact with Mr. Cammack, Torres was not aware that Church was already working for Max Access. *Id. at 40:14-17*. On June 28, 2008, Torres submitted his letter of resignation to SafeWorks. *Id. at 66:21 – 67:20*. Torres subsequently began employment with Max Access on July 9, 2008. *Id. at 64:23-25*.

## V. ARGUMENT AND AUTHORITIES

### A. *Church and Torres Are Entitled to Summary Judgment Because the Non-Solicitation Provisions Are Not Part of an Otherwise Enforceable Agreement.*

Under Texas law,[2] the Agreements are governed by the Texas non-compete

---

[2] Although the Non-Solicitation Agreements recite that they "shall be governed by the laws of the State of Washington," it is well-settled that a non-competition agreement involving a Texas employee must be construed under Texas law. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681 (Tex. 1990). In *DeSantis*, the Texas Supreme Court held that because "the law governing enforcement of noncompetition agreements is fundamental policy in Texas," application of another state's law to a non-compete agreement involving a Texas employee

statute, TEX. BUS. & COM. CODE §§ 15.50 *et seq.* This statute provides that:

> Notwithstanding Section 15.05 of this code, and subject to any applicable provision of Subsection (b), a covenant not to compete is enforceable if it is **ancillary to or part of an otherwise enforceable agreement at the time the agreement is made** [and] to the extent that it **contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee**.

TEX. BUS. & COM. CODE § 15.50(a) (emphasis added). The Non-Solicitation Agreements at issue here fail on both counts, in that the non-solicitation provisions: (1) are not part of an "otherwise enforceable agreement at the time the agreement is made," and (2) are overbroad as a matter of law.

Here, it is clear that the non-solicitation provisions are not part of an "otherwise enforceable agreement." Indeed, SafeWorks did not even sign the Agreements. *See Exhibits A & B* at p. 2 (signature line for SafeWorks). As such, there can be no enforceable promise by SafeWorks in the Agreements, because SafeWorks did not evince any intent to be bound by the Agreements.

Even if SafeWorks had signed the Agreements—which it did not—there is still no promise by SafeWorks that meets the standards required to create an enforceable non-compete. The Texas Supreme Court recently elaborated on the requirements for non-competition agreements in *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644 (Tex. 2006). In *Sheshunoff*, the Texas Supreme Court held that in order for a non-competition covenant to be ancillary to or part of an otherwise enforceable agreement in

---

"would be contrary to that policy." *Id.*

the context of at-will employment, the employer must establish both: "(1) that the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and (2) that the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement." *Id.* at 649 (emphasis added).

The Agreements do not meet the standards set forth in *Sheshunoff*. Rather, the Agreements cite as consideration the employee's "continuing employment," even though it is undisputed here that Church and Torres were both at-will employees. *See Exhibits A & B at p. 1*. It is well-settled under Texas law that a promise of continued employment is not sufficient consideration for a non-compete covenant in the context of at-will employment, in that such a promise is illusory. *See, e.g., Light v. Centel Cellular Co.*, 883 S.W.2d 642 (Tex. 1994). Moreover, the Agreements do not contain any affirmative promise by SafeWorks to actually provide Church or Torres with any confidential or trade secret information. *See Exhibits B & C*. Rather, the Non-Solicitation Agreements merely recite that the employees "have access to" allegedly confidential information[3] of SafeWorks, which is the same information that Church and Torres already had access to during their prior nine (9) and ten (10) years of employment.[4] *See id. at ¶ 1*. Because

---

[3] SafeWorks characterization of essentially anything and everything that has to do with its business as "confidential" in the Agreements is belied by information readily available on SafeWorks' own website. For example, SafeWorks identifies "customers' identities" as "Confidential Information," yet freely discloses such identities in press releases on its website at http://www.safeworks.com. Likewise, Christopher Bates, Director of National Accounts for SafeWorks, testified that he does not believe the names of SafeWorks' customers are confidential. *Exhibit E, Bates Depo. at 33:9-18*.

[4] In this regard, past access to confidential or trade secret information is insufficient

*Sheshunoff* requires an affirmative promise by the employer to provide consideration that gives rise to the employer's interest in restraining competition, it is clear the Agreements are not "otherwise enforceable agreements." *See Sheshunoff*, 209 S.W.3d at 647-49 (reciting affirmative promise that "Employer agrees to provide to Employee" special training and confidential and proprietary information in connection with promotion to new position).

### B. SafeWorks Is Not Entitled to Damages Because the Non-Solicitation Agreements Are Overbroad as a Matter of Law.

Even if the non-solicitation covenants at issue here were part of an "otherwise enforceable agreement," such covenants are plainly overbroad in that they do not contain restrictions on geographic scope and scope of activity that are "reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promise." *See* TEX. BUS. & COM. CODE § 15.50(a). "Whether an agreement not to compete is a reasonable restraint of trade is a question of law for the court." *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App. Houston [14th Dist.] 1996, writ denied) (citations omitted).

The Non-Solicitation Agreements purport to impose numerous post-employment restrictions on Church and Torres, providing that for a period of six (6) months after the termination of employment with SafeWorks:

> Employee will not directly or indirectly solicit or entice any of the following to cease, terminate, or reduce any relationship with the Company or to divert any business from the Company:

---

consideration to support a non-competition agreement. *See CRC-Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 264-65 (Tex. App.—Houston [1st Dist.] 1996, no writ).

(a) any employee, consultant or representative of the Company;

(b) any contractor or supplier of the Company;

(c) any customer or client of the Company; or

(d) any prospective customer or client from which Employee has solicited business while employed by the Company.

*Exhibits A & B at* ¶ 4. Notably, **none of the restrictions above contain *any* limitation on geographic scope**, let alone a "reasonable" geographic restriction as required by the statute. *See* TEX. BUS. & COM. CODE § 15.50(a).

### 1. The Non-Solicitation Provisions Are Overbroad as a Matter of Law.

With respect to the restriction on solicitation of "*any* customer or client of the Company," such provision is overbroad as a matter of law because it prohibits Church or Torres from soliciting *any* customer of SafeWorks – a global company with operations throughout North America as well as Europe and Asia[5] – regardless of whether Church or Torres ever had any contact with or even knew the identity of such customers. *See Exhibits A & B at* ¶ 5. "[A] covenant not to compete that extends to clients with whom a salesman had no dealings during his employment is unenforceable." *Wright v. Sport Supply Group, Inc.*, 137 S.W.3d 289, 298 (Tex. App.—Beaumont 2004, no pet.); *see also Hardy v. Mann Frankford Stein & Lipp Advisors, Inc.*, 263 S.W.3d 232, 250 (Tex. App. Houston [1st Dist.] 2007, pet. granted) (holding that an agreement that contained no geographical restrictions, and no restrictions as to clients that were actually served by the

---

[5] SafeWorks has locations in Vancouver, Seattle, Portland, San Francisco, San Diego, Denver, Minneapolis, Chicago, Detroit, St. Louis, Kansas City, Houston, Dallas, New Orleans, Pensacola, Orlando, Atlanta, Charlotte, Washington, D.C., Cleveland, New York, Philadelphia and Boston, as well as Belgium and Asia. *Exhibit E,* Bates Depo. *at p. 20:4 – 21:6.*

employee, was unenforceable). The non-solicitation of customers provision in the Agreements here is likewise unenforceable, in that it contains no geographic restriction whatsoever and is not limited to customers with whom Church or Torres did business with while employed by SafeWorks.[6] *See Exhibits A & B at* ¶ 5.

While the restriction on solicitation of *prospective* customers is limited to those "from which Employee has solicited business while employed by the Company," *see id.*, such provision is still overbroad in that there is no limitation on when such solicitation occurred. As noted previously, Church began his employment with Spider in May 1989, and thus had been employed as a salesperson with Spider for approximately 19 years at the time of his resignation in May 2008. As such, the restriction is overbroad because it is not limited to prospective customers with whom Church had *recent* contact, and SafeWorks plainly has no legitimate business interest in prohibiting contact with potential customers solicited by Church many years ago. *Cf. Sheshunoff*, 209 S.W.3d at 647 (limiting restrictive covenant to clients to whom employee had provided services within the last year of employment); *see also* Tex. Bus. & Com. Code § 15.50(a).

Like the restrictions on customers and potential customers, the restrictions on solicitation of (a) any employee, consultant or representative of the Company, and (b) any contractor or supplier of the Company, are likewise overbroad in that they are not limited to those that Church or Torres had any contact with or even knew about. *See Exhibits A & B at* ¶ 5. Accordingly, SafeWorks cannot demonstrate that such restrictions

---

[6] Notably, SafeWorks has never provided either Church or Torres with a list of SafeWorks' customers whom they are purportedly restricted from soliciting, rendering compliance with this overly broad provision a practical impossibility.

"do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." TEX. BUS. & COM. CODE § 15.50(a)

### 2. SafeWorks Is Not Entitled to Damages for Any Alleged Breach of the Non-Solicitation Provisions.

Because it is clear that, as a matter of law, the non-solicitations provisions of the Agreements are not reasonable and impose a greater restraint than necessary to protect the legitimate business interests of SafeWorks, SafeWorks is not entitled to recover damages for any alleged breach of such provisions.[7] *See* TEX. BUS. & COM. CODE § 15.51(c) (providing that the only relief available for overbroad non-competition covenants is injunctive relief following reformation of the contract).

### C. *SafeWorks Is Not Entitled to Injunctive Relief Because the Non-Solicitation Provisions Have Already Expired.*

Even assuming that the non-solicitation provisions at issue were part of an otherwise enforceable agreement, which they are not, and further assuming that the non-solicitation provisions could be reformed by the Court so as to be reasonable, SafeWorks is not entitled to injunctive relief in this matter because the non-solicitation provisions of the Agreements have already expired. Both Agreements provided that the non-solicitation provisions were to be in effect for a period of six months after termination of employment with SafeWorks. *Exhibits A & B at ¶ 5*. Here, it is undisputed that Church's last day of employment was May 30 or 31, 2008. *Exhibit D, Church Depo. at 64:17-19*. Torres' last day of employment was June 28, 2008. *Exhibit C, Torres Depo.*

---

[7] While denying that any such breach occurred, Defendants Church and Torres do not currently move for summary judgment on this basis.

*at 66:21 – 67:20.* As such, Church's 6-month non-solicitation period expired on November 30, 2008, while Torres' 6-month non-solicitation period expired on December 28, 2008. Because the non-solicitation provisions have already expired, SafeWorks' request for injunctive relief based on the terms of the Agreements is therefore moot.

### VI.  PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Defendants Alan L. Church and Gabriel J. Torres pray that the Court grant their Motion for Partial Summary Judgment as to SafeWorks' breach of contract claims, that Church and Torres recover their costs and attorneys' fees expended in this cause, and for such other and further relief, either at law and/or in equity, to which Church and Torres may be justly entitled.

Dated January 2, 2009                              Respectfully submitted,

/s/ _____
Gretchen Agena
State Bar No. 24040396
Federal I.D. No. 38500
LITTLER MENDELSON
A PROFESSIONAL CORPORATION
1301 McKinney Street
Suite 1900
Houston, TX 77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)
gagena@littler.com

ATTORNEY-IN-CHARGE FOR
DEFENDANTS ALAN L. CHURCH AND
GABRIEL J. TORRES

OF COUNSEL
Timothy T. McInturf
State Bar No. 00788020
Federal I.D. No. 18058
LITTLER MENDELSON
A PROFESSIONAL CORPORATION
1301 McKinney Street
Suite 1900
Houston, TX 77010
713.951.9400 (Telephone)
713.951.9212 (Telecopier)
tmcinturf@littler.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of January, 2009, a true and correct copy of the foregoing instrument has been served on counsel of record for Plaintiff via electronic delivery, pursuant to Local Rule 5.1, as follows:

>   Stephen E. Fox
>   Robert L. Rickman
>   FISH & RICHARDSON P.C.
>   1717 Main Street, Suite 5000
>   Dallas, Texas 75201

>   /s/ _____
>   Gretchen Agena