# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| SAFEWORKS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:08-cv-02860 |
| | § | |
| MAX ACCESS, INC., ALAN L. | § | |
| CHURCH, and GABRIEL R. TORRES, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT ALAN L.  CHURCH'S AND GABRIEL J. TORRES' MOTION FOR PARTIAL SUMMARY JUDGMENT

Stephen E. Fox , Esq.
Robert L. Rickman, Esq.
Fish & Richardson P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
Telephone:  214-747-5070
Telecopy:  214-747-2091

# TABLE OF CONTENTS

**Page**

I.   NATURE AND STAGE OF PROCEEDING ........................................................... 1

II.  ISSUES TO BE RULED UPON BY THE COURT .................................................. 2

III. SUMMARY OF OPPOSITION ................................................................. 2

IV.  STATEMENT OF FACTS........................................................................ 4

V.   LEGAL ARGUMENTS AND AUTHORITY ........................................................ 6

   A.   The Non-Solicitation Provisions Are Part of an "Otherwise Enforceable
        Agreement" ..................................................................................... 6

        1.   The Parties Intended to Enter Into and Abide By the Terms of a
             Binding Contract, Thereby Negating the Need for SafeWorks'
             Signature........................................................................... 7

        2.   SafeWorks Fulfilled Its Obligations Under the Unilateral Contract by
             Providing Adequate Consideration. ...................................... 8

   B.   SafeWorks Requests that the Non-Solicitation Provisions Be Upheld to
        the Extent They Prohibit Solicitation of Customers and Employees With
        Which Church and Torres Interacted During Their Employment With
        SafeWorks .................................................................................... 19

   C.   The Expiration of the Non-Solicitation Provisions Does Not Bar
        Injunctive Relief ............................................................................ 21

VI.  CONCLUSION..................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

CASES

*Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,*
209 S.W.3d 644 (Tex. 2006)..............................................................................passim

*Beasley v. Hub City of Texas, L.P.,*
No. 01-03-00287-CV, 2003 WL 22254692 (Tex. App.—Houston [1st Dist.]
Sept. 29, 2003) ...................................................................................... 14, 15

*CRC-Evans Pipeline Int'l, Inc. v. Myers,*
927 S.W.2d 259 (Tex. App.—Houston [1st Dist.] 1996) .................................. 14, 20

*DeSantis v. Wackenhut Corp.,*
793 S.W.2d 670 (Tex. 1990)................................................................... 17, 19

*Dodson v. Stevens Transp.,*
776 S.W.2d 800 (Tex. App.—Dallas 1989)............................................... 12

*Guy Carpenter & Co. v. Provenzale,*
334 F.3d 459 (5th Cir. 2003) ...................................................................... 22

*In re Bunzl USA, Inc.,*
155 S.W.3d 202 (Tex. App.—El Paso 2004)............................................... 7

*Light v. Centel Cellular Co.,*
883 S.W.2d 642 (Tex. 1994)................................................................passim

*Pace Corp. v. Jackson,*
284 S.W.2d 340 (Tex. 1955)....................................................................... 12

*Scaife v. Associated Air Ctr. Inc.,*
100 F.3d 406 (5th Cir. 1996)..................................................................... 8

*Shoreline Gas, Inc. v. McGaughey,*
No. 13-07-364-CV, 2008 WL 1747624 (Tex. App.-Corpus Christi April 17,
2008) .......................................................................................... 13, 15, 18

*Tom James of Dallas, Inc. v. Cobb,*
    109 S.W.3d 877 (Tex. App.—Dallas 2003).............................................................. 20

*Travel Masters, Inc. v. Star Tours, Inc.,*
    742 S.W.2d 837 (Tex. App.—Dallas 1988).............................................................. 17

*Vanegas v. Am. Energy Servs.,*
    224 S.W.3d 544 (Tex. App.—Eastland 2007) .................................................. 12, 13

*Weatherford Oil Tool Co. v. Campbell,*
    340 S.W.2d 950 (Tex. 1960)..................................................................................... 20

*West v. Pennyrich Int'l, Inc.,*
    447 S.W.2d 771 (Tex. App.—Waco 1969).............................................................. 17

*Zep Mfg. Co v. Harthcock,*
    824 S.W.2d 654 (Tex. App.—Dallas 1992).............................................................. 21

## STATUTES

Tex. Bus. & Com. Code §§ 15.50................................................................................. 2, 6

## OTHER AUTHORITIES

*Dorsaneo, Texas Litigation Guide* § 210A.01[3] (2008) ..................................... 12

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| SAFEWORKS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:08-cv-02860 |
| | § | |
| MAX ACCESS, INC., ALAN L. | § | |
| CHURCH, and GABRIEL R. TORRES, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT ALAN L.  CHURCH'S AND GABRIEL J. TORRES' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff SafeWorks, LLC ("SafeWorks") hereby files its Response in Opposition to Defendant Alan L. Church's ("Church") and Gabriel J. Torres' ("Torres") Motion for Partial Summary Judgment (the "Motion") and, in support thereof, respectfully shows as follows:

### I.    NATURE AND STAGE OF PROCEEDING

In this lawsuit, Safeworks brings claims against its former employees, Church and Torres, and their new employer, Max Access, Inc. ("Max Access"), for breach of Confidentiality and Non-Solicitation Agreements ("Non-Solicitation Agreements" or "Agreements"), including breach of non-disclosure and non-solicitation covenants,  misappropriation of trade secrets, conversion, tortious

interference, and conspiracy.    Safeworks seeks damages and injunctive relief. Defendants have moved for partial summary judgment as to Safeworks' claims for breach of the Non-Solicitation Agreement pursuant to Federal Rule of Civil Procedure 56(c).  Safeworks hereby responds.

## II.    ISSUES TO BE RULED UPON BY THE COURT

The issues to be ruled upon by the Court are:

(1)    Is the Non-Solicitation Agreement an "otherwise enforceable agreement" under Tex. Bus. & Com. Code § 15.50(a)?

(2)    Are the limitations in the Non-Solicitation Agreement reasonable so as to comply with Tex. Bus. & Com. Code § 15.50(a)?

(3)    Does the expiration of the non-solicitation period in a contract render a request for an injunction moot?

The above issues are subject to Rule 56(c)'s standard of review, which requires the reviewing court to determine whether the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III.    SUMMARY OF OPPOSITION

The non-solicitation provisions at issue in the instant case satisfy the Texas Business & Commerce Code's requirement that a covenant not to compete be

part of "an otherwise enforceable agreement." Tex. Bus. & Com. Code §§ 15.50. In light of the facts developed in discovery, SafeWorks concedes, however, that the non-solicitation provisions could possibly be construed as overbroad under Texas law to the extent that they fail to limit the non-solicitation of employees and customers of SafeWorks to those of which Church or Torres were aware or had contact during their employment with SafeWorks. In an effort to protect just the confidential, proprietary, and trade secret information that Defendants received and are using to unfairly compete, SafeWorks asks this Court to enforce the non-solicitation provision only to the extent it restricts activities related to those employees and customers or prospects with which Church and Torres had interaction during their employment with SafeWorks. Furthermore, SafeWorks is not barred from seeking damages for breach of the non-disclosure provision, which is independently enforceable and not subject to the requirements of § 15.50 et seq. of the Texas Business & Commerce Code (the "Covenants Not to Compete Act"). Last, the expiration of the time period provided by a non-solicitation provision does not make a suit brought to enforce the non-solicitation period moot.

IV.     STATEMENT OF FACTS

SafeWorks is engaged in the business of manufacturing, selling, distributing and servicing powered suspended access equipment, suspended scaffolding, hoists, work platforms, work cages, and safety equipment, for the construction, industrial restoration, and maintenance industries.  Declaration of Christopher Bates ("Bates Decl.") at ¶ 2, attached as Exhibit "A".  The Spider® division in Houston sells and rents equipment directly to end users and through equipment dealers.  *Id.*

SafeWorks has developed long-term and ongoing business and sales relationships with numerous customers, clients, vendors, and suppliers through the design, manufacture, sales, distribution, and maintenance of its products.  *Id.* at ¶ 8.  SafeWorks has expended substantial time, labor, and money to develop and maintain the skills, strategies, methods, techniques, plans, programs, and pricing relating to its products, services, clients, and potential clients, all of which are necessary to cultivate and maintain the customer relationships.   This collective knowledge is confidential and proprietary and, singularly and collectively, constitutes SafeWorks' trade secrets and confidential information (hereinafter referred to as "Trade Secrets").  *Id.* at ¶ 7.

In the course of their employment with SafeWorks, Defendants Church and Torres were provided with and had access to SafeWorks' Trade Secrets. *Id.* at ¶ 8.   Moreover, Church and Torres used this Trade Secret information to develop, cultivate, and strengthen relationships with customers, clients, vendors, and suppliers during the course of performing their duties for SafeWorks. *Id.* Accordingly, as a condition of their employment with SafeWorks, Church and Torres were required to separately execute an Agreement on October 2, 1997, agreeing to—among other things—not (a) use or disclose SafeWorks Trade Secrets after the termination of their employment, and (b) not induce SafeWorks employees, suppliers or customers to cease, terminate, or reduce any relationship with SafeWorks.    Church Confidentiality and Non-Solicitation Agreement, attached as Exhibit "B"; Torres Confidentiality and Non-Solicitation Agreement, attached as Exhibit "C".   Prior to signing the Agreements, Church and Torres were employed in a similar capacity with SafeWorks' predecessor, but upon SafeWorks purchasing the assets of the business, Church and Torres were required to execute the Agreement.   Exhibit A, Bates Decl. at ¶ 6.   The Trade Secrets provided to Church and Torres in the ten-plus years of employment with SafeWorks was not the same information to which they had access prior to becoming SafeWorks employees.   *Id.* at ¶ 8.   The Trade Secrets provided to

Church and Torres changed over the duration of their employment with SafeWorks, and as customers, pricing, margins, and methodologies changed (among other things), Church and Torres became privy to this new and evolving Trade Secret information.   *Id.*; Deposition of Alan L. Church, ("Church Depo.") at 37:22-40:12, attached as Exhibit "D".

On May 30, 2008, Church resigned from SafeWorks and began working for Max Access, a direct competitor of SafeWorks.   A few weeks later, Torres also resigned and began working for Max Access.

## V.    LEGAL ARGUMENTS AND AUTHORITY

A.    The Non-Solicitation Provisions Are Part of an "Otherwise Enforceable Agreement"

The non-solicitation provisions at issue in the instant case satisfy the Texas Business & Commerce Code's requirement that a covenant not to compete be part of "an otherwise enforceable agreement."   Tex. Bus. & Com. Code §§ 15.50. Defendants contend that the Agreements fail to satisfy this requirement:   (1) because SafeWorks did not sign the Non-Solicitation Agreements; (2) because the Agreements do not contain an affirmative promise by SafeWorks to provide Church or Torres with confidential or trade secret information; and (3) because the consideration cited in the Agreements is the employee's "continuing

employment."[1]  Motion at 6-9.  Defendants' arguments are unavailing and evince

a fundamental miscomprehension of Texas non-compete jurisprudence and basic

contract law.   The Non-Solicitation Agreements at issue fully satisfy the

"otherwise enforceable agreement" requirement.

>    1.    The Parties Intended to Enter Into and Abide By the Terms of a
>          Binding Contract, Thereby Negating the Need for SafeWorks'
>          Signature.

Without citing a single case in support of its argument, Defendants

contend that the Agreements are "not part of an otherwise enforceable

agreement" because SafeWorks failed to sign the Agreements.   Motion at 7.

Though, as explained in detail below, a signature by the promisee is irrelevant to

the inquiry as to whether a unilateral contract has been formed in a non-

competition agreement, it is plain that Texas law does not require a written

contract to be signed to be binding.  *See In re Bunzl USA, Inc.,* 155 S.W.3d 202, 209

(Tex. App.—El Paso 2004).  "If the parties have unconditionally assented to terms

stated in an unsigned document, the document constitutes a binding written

contract, regardless of whether it is signed."  *Id.*  "Thus, the question of whether

a written contract must be signed to be binding is a question of the parties'

intent."  *Id.* at 209.  And the evidence in the record demonstrates that the parties

---

[1] The second and third arguments are essentially the same (i.e., both erroneously contend that
SafeWorks failed to provide adequate consideration).

intended the Non-Solicitation Agreement to be binding.   Exhibit D, Church

Depo. at 15:4-7.   At a minimum, the question of whether the parties intended to

be bound is a question of fact and is inappropriate to be resolved at summary

judgment. *See Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 410 (5th Cir. 1996).

     2.     SafeWorks Fulfilled Its Obligations Under the Unilateral Contract by
            Providing Adequate Consideration.

          (a)     The Agreements at Issue Constitute a Binding Unilateral
                 Contract.

In *Light v. Centel Cellular Co.*, 883 S.W.2d 642 (Tex. 1994),[2] the Texas

Supreme Court explained that the Texas Business & Commerce Code's

requirement that a covenant not to compete must be "ancillary to or part of an

otherwise enforceable agreement at the time the agreement is made" actually

contains two pertinent inquiries: "(1) is there an otherwise enforceable

agreement, to which (2) the covenant not to compete is ancillary to or a part of at

the time the agreement is made." *Id.* at 644.   On the "otherwise enforceable

agreement" score--which is the only requirement that Defendant claims is

deficient in relation to the three arguments above--the court held that "'otherwise

enforceable agreements' can emanate from at-will employment so long as the

---

[2] As explained in more detail below, the *Sheshunoff* opinion overruled certain aspects of *Light* regarding the timing of the consideration given to the employee.   The remainder of *Light* remains good law. *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651-55 (Tex. 2006).

consideration for any promise is not illusory." *Id.* at 645.   The problem with employment at-will with regard to enforceability, the court explained, is that "[c]onsideration for a promise, by either the employee or the employer in an at-will employment, cannot be dependent on a period of continued employment" because "it fails to bind the promisor who always retains the option of discontinuing employment in lieu of performance." *Id.* at 644-45.

In other words, "[a]ny promise made by either employer or employee that depends on an additional period of employment is illusory because it is conditioned upon something that is exclusively within the control of the promisor." *Id.* at 644 n.5.   For example, an employer could promise to provide confidential information to an at-will employee in exchange for the employee signing a non-competition agreement and, after the employee signs the agreement, "the employer could fire the employee and be under no obligation to perform the promise." *Id.*   According to *Light*, any promise by the employer to give the employee specialized training or access to confidential information in the future was illusory at the time it was made. *Id.*

The *Light* court, however, was aware that there was a possibility that the employee's agreement to not compete could be construed as an offer which

could be accepted by the employer by performing later under a unilateral contract theory.  The court explained:

> If only one promise is illusory, a unilateral contract can still be formed; the non-illusory promise can serve as an offer, which the promisor who made the illusory promise can accept by performance. *See* FARNSWORTH, *supra* note 4, at 75--76. For example, suppose an employee promises not to disclose an employer's trade secrets and other proprietary information, if the employer gives the employee such specialized training and information during the employee's employment. If the employee merely sought a promise to perform from the employer, such a promise would be illusory because the employer could fire the employee and escape the obligation to perform. *If, however, the employer accepts the employee's offer by performing, in other words by providing the training, a unilateral contract is created in which the employee is now bound by the employee's promise. See id.* at 76 (describing the non-illusory promise as a disguised offer).

*Id.* at 645 n.6 (emphasis added).    While recognizing that such performance "created a binding unilateral contract" and was thus not illusory, the court found that such an agreement would run afoul of an additional requirement: that "future performance[] could not support a covenant not to compete inasmuch as it was not an  "otherwise enforceable agreement *at the time the agreement is made.*" *Id*. (quoting Tex. Bus. & Com. Code §§ 15.50) (emphasis added).  Thus, the *Light* court concluded that, even where an employer later performs by providing confidential information to the employee, a non-compete that does not require the   employer   to   immediately   provide   confidential   information   was

unenforceable under the Act. *Id.* This latter conclusion, however, was revisited by the Texas Supreme Court twelve years later.

In *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644 (Tex. 2006), the Texas Supreme Court stated that the question before it was "whether an at-will employee who signs a non-compete covenant is bound by that agreement if, at the time the agreement is made, the employer has no corresponding enforceable obligation." *Id.* at 646. After assessing the Covenants Not to Compete Act's legislative history, the court overruled *Light* "insofar as it precludes a unilateral contract made enforceable by performance from ever complying with the Act because it was not enforceable at the time it was made." *Id.* at 650-51. The court saw "no sound reason why a unilateral contract made enforceable by performance should fail under the Act." *Id.* at 651. The court concluded that if a non-competition agreement "becomes enforceable after the agreement is made because the employer performs . . . and a unilateral contract is formed, the covenant is enforceable if all other requirements of the Act are met." *Id.* at 655. Unequivocally, the court, as stated in a section heading, ruled that "The Act Applies to Unilateral Contracts," thereby rejecting *Light's* requirement that the unilateral contract be enforceable "at the time it was made." *Id.*

Defendants' arguments are deficient because they fail to apprehend the basic nature of a unilateral contract—one that the *Light* court specifically explained and one that the *Sheshunoff* court embraced as enforceable.   A unilateral contract need not contain an enforceable obligation by both parties at the time that the offer is made. *See Pace Corp. v. Jackson*, 284 S.W.2d 340, 344 (Tex. 1955).   Indeed, a "'unilateral contract' has only one promisor; the promisee makes no commitment."   *Dorsaneo, Texas Litigation Guide* § 210A.01[3] (2008); *Vanegas v. Am. Energy Servs.*, 224 S.W.3d 544, 549 (Tex. App.—Eastland 2007); *Dodson v. Stevens Transp.*, 776 S.W.2d 800, 805 (Tex. App.—Dallas 1989).   In the non-compete context, "the non-illusory promise [(the promise by the employee not to compete)] can serve as an offer, which the promisor [(the employer)] can accept by performance [(by providing the training or confidential information)]." *Light* at 645 n.6.   This understanding of unilateral contracts in the non-compete context was specifically approved by the Texas Supreme Court in *Sheshunoff*. *Sheshunoff*, 209 S.W.3d at 650 ("We agree with *Light*'s recitation of basic contract law in footnote six.").

Thus, Defendants' assertions that the Agreements were not signed by SafeWorks and that the Agreements failed to obligate SafeWorks to provide Church or Torres with confidential information are irrelevant because the

promisee in a unilateral contract need not make any commitment at all at the time the offer is made. *Vanegas*, 224 S.W.3d at 549. Indeed, all that is required under Texas non-compete law is for the employee to promise to not disclose confidential information or promise not to compete in exchange for receiving confidential information. This constitutes an offer by the employee which the employer can accept by performing and providing the employee with the confidential information.

At the time Church and Torres signed the Non-Solicitation Agreement, each "recognize[d] and acknowledge[d]" that he "w[ould] have access to Confidential Information." Exhibits B & C at ¶ 1. In return, Church and Torres promised, "during the term of employment with the Company and for a period of six months thereafter . . . [to] not directly or indirectly solicit or entice" customers of SafeWorks. *Id.* at ¶ 5. Church's and Torres' promises to not solicit SafeWorks' customers, "though not enforceable when made, constituted an offer for a unilateral contract which [SafeWorks] had the option to accept." *Shoreline Gas, Inc. v. McGaughey*, No. 13-07-364-CV, 2008 WL 1747624 at *6 (Tex. App.—Corpus Christi April 17, 2008) (applying *Sheshunoff*). "[SafeWorks] accepted [Church's and Torres'] offer[s] by performing—that is, by supplying [Church and Torres] with confidential information—and so a unilateral contract was

formed under which [Church and Torres] became bound by [their] promise[s]."

*Id*.  "Under *Sheshunoff,* such a unilateral contract constitutes an 'otherwise enforceable agreement' sufficient to support an accompanying non-compete covenant." *Id.*

> (b)     Even if the Agreement Required a Promise by Safeworks to Provide Confidential Information in the Future at the Time of Execution, Such a Requirement Would Be Satisfied by the Language of the Agreement.

Even if *Sheshenoff* requires an employer to promise to provide the employee with confidential information or specialized training in the future at the time the agreement is executed, which it does not, Church's and Torres' acknowledgment that they will receive confidential information in the Non-Solicitation Agreement is sufficient to create an implied promise by Safeworks to provide the confidential information in the future under Texas law.  Exhibits B & C at ¶ 1; *see CRC-Evans Pipeline Int'l, Inc. v. Myers,* 927 S.W.2d 259, 261, 265 (Tex. App.—Houston [1st Dist.] 1996) (finding that non-compete in which employee "acknowledged that he . . . will receive trade secrets and confidential information" could support a trial court's finding that "there was an implied promise to provide appellees specialized training"); *Beasley v. Hub City of Texas, L.P.,* No. 01-03-00287-CV, 2003 WL 22254692 (Tex. App.—Houston [1st Dist.] Sept. 29, 2003) (finding that non-compete in which employee acknowledged

"that, by virtue of [his] employment[,] . . [he] will be granted otherwise prohibited access to confidential and proprietary data" supported trial court's finding that employer "promised to provide" the employee with confidential information). Stated simply, Texas courts will "treat[] an employee's acknowledgment that he has or will receive trade secrets and confidential information from his employer as an implied promise that the employer will provide trade secrets and confidential information." *Beasley*, 2003 WL 22254692, at *5. .

> (c) SafeWorks Fulfilled Its Obligations and Created a Binding Agreement by Providing the Requisite Confidential Information.

With regard to Defendants' contention that the cited consideration in the Agreements is the employee's "continuing employment," Defendants fail to apprise the Court that the Agreements also cite "other consideration" for entering the Non-Solicitation Agreement, which Torres and Church acknowledge in the Agreements is "access to Confidential Information of the Company and its clients or customers." Exhibits B & C at ¶ 1. And, as discussed above, such non-competition agreements become "enforceable as soon as the employer provide[s] confidential information to the employee." *Shoreline*, 2008 WL 1747624 at *8; *Sheshunoff*, 209 S.W.3d at 655. *see also Light*, 883 S.W.2d at 647

(discussing that the grant of confidential information may provide basis for enforcement of non-competition agreement).

To the extent that Defendants argue that the Agreements are not "otherwise enforceable" because Church and Torres were in "continuing employment" with SafeWorks at the time they signed the Agreements and already had access to the confidential information, Defendants' arguments fail from both a factual and legal perspective. First, in October of 1997 when Church and Torres signed the Agreements, SafeWorks had acquired the business where Church and Torres were employed. Exhibit D, Church Depo. at 13:14-21. Church and Torres signed the Agreements as a condition of *becoming* SafeWorks employees. Exhibit D, Church Depo. at 13:22-24; Deposition of Gabriel J. Torres ("Torres Depo.") at 32:12-33:1, attached as Exhibit "E". Furthermore, the critical inquiry under *Sheshunoff* is whether the employee was given confidential information after the execution of the agreement, and it is clear and undisputed that Church and Torres were given access to confidential information after October 1997. Exhibit A, Bates Decl. at ¶¶ 7, 8. Defendants had access to and knowledge of: identities of customers and prospects (including the identity of the specific contact and that person's contact information); the identity of SafeWorks' vendors and suppliers, and the rates charged by those vendors/suppliers; rates

and pricing discounts for SafeWorks' customers; volume and purchasing/rental preferences for SafeWorks' customers; SafeWorks' methodologies of providing products and services to customers; engineering and service documents; contract terms and project status; salary and production information regarding employees; company financial information (including profit margins); future projects and negotiations; marketing and business development plans; computer programs; and data files. Exhibit A, Bates Decl. at ¶ 7; *see also* Exhibit D, Church Depo. at  37:22-40:12; Exhibit E, Torres Depo. at 21:2-29:12. Such confidential information is commonly found to be protectable under the Covenants Not to Compete Act. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 682 (Tex. 1990) (stating that confidential information is an example of an "interest worthy of protection" by a covenant not to compete); *see also West v. Pennyrich Int'l, Inc.*, 447 S.W.2d 771, 773 (Tex. App.—Waco 1969); *Travel Masters, Inc. v. Star Tours, Inc.*, 742 S.W.2d 837, 840 (Tex. App.—Dallas 1988).  Indeed, Max Cammack, owner of Defendant Max Access, testified that his own business' master customer list is confidential information.  Deposition of Max H. Cammack ("Cammack Depo.") at 47:16-20, attached as Exhibit "F".

Furthermore, *Sheshunoff* makes clear that information provided to an at-will employee, including when the "covenant[] not to compete [is] executed in

the course of at-will employment," can satisfy the requirements of an "otherwise

enforceable agreement," so long as the confidential information is "new

consideration from the employer." *Sheshunoff*, 209 S.W. 3d at 651 (holding that

non-compete was enforceable even though employee was a current employee at

the time that the agreement was signed because the employer provided the

employee with new training and additional confidential information).   Church

admitted that during his employment with SafeWorks, the confidential

information they had access to and received, such as customers, the individuals

to contact at those customers, prices, and products, changed.   Exhibit D, Church

Depo. at  37:22-40:12; *see also* Exhibit A, Bates Decl. at ¶ 8.  Because Church and

Torres gained new confidential information over the 11 years they worked for

SafeWorks after it purchased the business in 1997, the Non-Solicitation

Agreement is enforceable.[3]

---

[3] Defendants make no argument that the Non-Solicitation Agreements fail to satisfy the second
requirement explicated in *Light*:  that the covenant not to compete "is ancillary to or a part of"
an otherwise enforceable agreement.  883 S.W.2d at 644.  Of course, such an argument would be
unavailing.   In order to be "ancillary to or part of" the otherwise enforceable agreement, the
otherwise enforceable agreement must give rise to an "interest worthy of protection" by the
covenant not to compete.  *Sheshunoff*, 209 S.W.3d at 648-49.   And *Sheshunoff* teaches that in the
case of a unilateral contract the newly enforceable agreement created when the employer
provides the employee with confidential information "g[ives] rise to an 'interest worthy of
protection' by a non-compete covenant because it protected 'confidential or proprietary
information.'"  *Shoreline*, 2008 WL 1747624 at *8 (quoting *Sheshunoff*, 209 S.W.3d at 657).

B.   SafeWorks Requests that the Non-Solicitation Provisions Be
     Upheld to the Extent They Prohibit Solicitation of Customers and
     Employees With Which Church and Torres Interacted During
     Their Employment With SafeWorks

SafeWorks has, at all times past and present, believed that the Non-

Solicitation Agreements are enforceable as written.  Moreover, at the time of

execution and thereafter, SafeWorks believed that the choice-of-law provision in

the contract would require that Washington law would apply to the Agreement.

Exhibits B & C at ¶ 5.  However, now that discovery has revealed that Church

and Torres did not have knowledge of confidential and proprietary information

related to all of SafeWorks' customers and operations, and in an effort to focus

this dispute and protect only those trade secrets to which Church and Torres had

access to while employed by SafeWorks, SafeWorks asks this Court to rule that

the provisions are enforceable only to the extent that they restrict the solicitation

of employees, consultants, representatives, contractors, suppliers, customers, and

clients of SafeWorks to those of which Defendants were aware or had contact

during their employment with SafeWorks.[4]

Texas law teaches that a court may reform a non-solicitation provision "by

granting an injunction restraining the defendant from competing for a time and

---

[4] Plaintiff agrees that Texas law governs the enforceability of the Non-Solicitation Agreement.
*See Desantis,* 793 S.W.2d at 681.

within an area that are reasonable under the circumstances." *Weatherford Oil Tool Co. v. Campbell*, 340 S.W.2d 950, 952 (Tex. 1960).   Because SafeWorks seeks injunctive relief on its claim for breach of the Non-Solicitation Agreement, the court may reform the contract so as to comply with the reasonableness requirement.

SafeWorks also concedes that it may be barred from recovering damages for breach of the non-solicitation provision, but its claims for damages for breach of the non-disclosure provision by Church and Torres remain because non-disclosure agreements may be enforceable even if a covenant not to compete is not. *See CRC-Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 265 (Tex. App.—Houston [1st Dist.] 1996); *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 888 (Tex. App.—Dallas 2003).  Specifically, Church and Torres promised to "hold the Confidential Information in trust and confidence, and not to use, copy, [or] disclose . . . the Confidential Information."  Exhibits B & C at ¶ 2.  Furthermore, Church and Torres promised to not "directly or indirectly disclose names, addresses, telephone numbers, compensation, or arrangements between" SafeWorks and its customers, clients, employees, and partners to any competitor of SafeWorks.  Exhibits B & C at ¶ 5.  These promises are enforceable agreements to not disclose SafeWorks' confidential information and are independently

enforceable regardless of the enforceability of the non-solicitation provisions because non-disclosure agreements are not considered restraints of trade. *See Zep Mfg. Co v. Harthcock*, 824 S.W.2d 654, 663 (Tex. App.—Dallas 1992) (affirming the trial court's summary judgment enforcing a non-disclosure clause despite being accompanied by an unenforceable non-compete covenant).[5]

    C.    The Expiration of the Non-Solicitation Provisions Does Not Bar Injunctive Relief

Though the Non-Solicitation Agreements provide for the non-solicitation provision to be in effect for a period of six months after termination of employment with SafeWorks, and though more than six months has passed since Church's and Torres' last days of employment, SafeWorks is still entitled to injunctive relief. Both Church and Torres began employment with Max Access in June of 2008, shortly after they resigned from SafeWorks. Although the Non-Solicitation Agreement explicitly provided that Church and Torres were prohibited from soliciting SafeWorks' customers, either "directly or indirectly," Church testified that he had conversations with existing customers of SafeWorks soon after he started working at Max Access. Exhibit D, Church Depo. at 100:3-9.

---

[5] Relatedly, Plaintiff's claims for tortious interference with contract would remain to the extent that the claim is based upon breach of the non-disclosure provision. Furthermore, Plaintiff's claims for damages stemming from Plaintiff's claims for misappropriation of trade secrets and confidential information, conversion, tortious interference with its relationship with its customers, and conspiracy remain because they are independent of the non-solicitation provision.

Similarly, Torres testified that he had placed orders for certain customers of SafeWorks during his new employment with Max Access.  *See e.g.* Exhibit E, Torres Depo. at 53:18-22.   Despite the Non-Solicitation Agreement's clear language, Church and Torres have refused to abide by the Agreements' terms for six months.   Indeed, Church and Torres immediately began interacting with SafeWorks' customers at Max Access.  SafeWorks is entitled to the benefit of the bargain it negotiated with Church and Torres.  The fact that Church and Torres were able to blatantly disregard the Non-Solicitation Agreement and that the restrictive period expired by its own terms while the judicial process ran its course should not deprive SafeWorks of legal recourse.

Although Defendants contend, without citing any authority, that the expiration of the six month period makes the question moot, binding Fifth Circuit precedent interpreting Texas law is to the contrary.  In *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459 (5th Cir. 2003), the court held that the expiration of the proscribed period of a contract in a suit seeking an injunction to enforce that contract "does not make this issue moot."  *Id.* at 464.  The court noted that under Texas law, "injunctions are equitable and that district courts may impose injunctions that last beyond a contract provision's expiration date."  *Id.*   The court thus concluded that the expiration date does not deprive the court of

jurisdiction to hear the dispute and to order injunctive relief under its equitable powers. *Id.* As in *Provenzale*, here SafeWorks requests the Court to exercise its equitable discretion to enjoin Church and Torres from soliciting SafeWorks' customers and provide SafeWorks with the benefit of its bargain. The injunction which SafeWorks seeks is not moot.

VI.    CONCLUSION

Based on the arguments and authorities set forth herein, Plaintiff respectfully requests that the Court deny Defendant Alan L. Church's and Gabriel J. Torres' Motion for Partial Summary Judgment and grant SafeWorks all relief in law or in equity to which it  may be entitled.

Dated:  February 6, 2009                Respectfully submitted,

                                        **FISH & RICHARDSON P.C.**

                                        By:  */s/ Robert  L. Rickman*
                                        _____
                                             Robert L. Rickman
                                             Texas Bar No. 24013400
                                             Southern Bar District No. 27580

                                             1717 Main Street, Suite 5000
                                             Dallas, Texas 75201
                                             Telephone:  214-747-5070
                                             Telecopy:  214-747-2091


                                        **Counsel for Plaintiff,
                                        SAFEWORKS, LLC.**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 6, 2009 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.


                         /s/ Robert L. Rickman
                         Robert L. Rickman